30 F.3d 132
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur Raymond SPRIGGS, Jr., Defendant-Appellant.
 No. 93-5852.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 6, 1994.
Decided August 1, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-93-222)
 Gerald F. Ragland, Jr., Alexandria, VA, for appellant.
 Helen F. Fahey, U.S. Atty., Sherrill A. LaPrade, Sp. Asst. U.S. Atty., Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN and MICHAEL, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Arthur Raymond Spriggs, Jr., pled guilty to possession of heroin with intent to distribute; possession of cocaine; and attempted introduction of contraband. His plea was conditioned on his right to appeal the district court's denial of his motion to suppress the introduction of the narcotics. The cocaine and heroin were discovered during a search of Spriggs's person when he visited Lorton Reformatory.
 
 
 2
 The facts are undisputed. At the suppression hearing, the only witness was Corporal Richard Price; Spriggs offered no evidence. Price had worked at Lorton for seven years and described the ready availability of drugs at the prison. Drug smuggling is common, with visitors providing the principal means of introduction of narcotics. As a corrections officer, Price stated that he was well aware of the problems of smuggling and the methods used by visitors, including concealment of contraband in the mouth and shoes, underneath fingernails, in the lining of clothing and in watches and rings, and, in the majority of cases, in the groin.
 
 
 3
 Corporal Price described Spriggs's visit to Lorton. Appellant arrived in the evening at the prison's visitor's trailer. A sign posted on the outside of the trailer warned that no drugs or contraband were allowed in the facility and that visitors would be searched. Inside the trailer, visitors are required to present identification with a photograph and provide the name of the prisoner they are to visit. Visitors must be on an existing visitor list.
 
 
 4
 Spriggs presented his photo identification and was given a printout listing his name. The printout contained the following warning:
 
 
 5
 All persons entering this institution will be subject to a search. Any individual caught attempting to smuggle narcotic contraband or any weapon will be arrested and prosecuted to the fullest extent of the law and is subject to imprisonment for more than ten years.
 
 
 6
 Spriggs, identification and printout in hand, passed through a metal detector device. Corporal Price, having checked the identification and printout, directed Spriggs to the male shakedown room where the search was to take place.
 
 
 7
 Price first told Spriggs that he could not wear his hooded sweatshirt into the prison; Appellant removed the sweatshirt. Price then examined Spriggs's mouth, including top and lower gums, cheeks, and tongue. The corporal then patted down Spriggs's entire upper body. Spriggs took off his shoes and emptied his pants pockets at Price's request. Price detected a second garment at Spriggs's waist, a pair of sweatpants. Spriggs removed the sweatpants when Price asked.
 
 
 8
 When Spriggs was putting his pants back on, Price told him that he was going to pat down the groin area. Spriggs objected, stating that his Muslim religious beliefs precluded anyone touching his groin area or feet. Price observed Spriggs perspiring and noted that he seemed "jittery." The corporal offered to do only a visual inspection of the groin. Spriggs continued to object. Price was suspicious: he had previously patted down Muslims in this area without objection.
 
 
 9
 Price called his superior. A detective from the federal narcotics interdiction task force also arrived. Price's superior asked Spriggs some questions about the Islamic religion; Spriggs did not give satisfactory answers.
 
 
 10
 Appellant was then told that the search could not be stopped. The officers restrained him. Price undid Spriggs's pants and dropped them to his knees along with his underpants and jock strap. The jock strap had a pocket for a protective athletic cup. No contraband was found by visual inspection of Spriggs's groin.
 
 
 11
 When Spriggs pulled up his undergarments, however, Price ordered Spriggs to stop for a search of his jock strap. Price unsnapped the athletic cup pocket and discovered a blue balloon. The balloon contained eleven baggies, ten containing heroin and one containing cocaine, the evidence Spriggs sought to suppress.
 
 
 12
 This Court reviews the legal conclusions in a suppression determination de novo and factual conclusion under the clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992). We are presented with the question of whether the district court erred in denying Spriggs's motion to suppress, holding that a visitor to a prison, who is warned that all visitors will be searched and who consents to a search, may not withdraw consent after the search has begun.
 
 
 13
 The district court relied on this Court's decisions regarding the withdrawal of consent in the context of airport searches. In United States v. DeAngelo, 584 F.2d 46 (4th Cir.1978), cert. denied, 440 U.S. 935 (1979), a passenger at an airport security station offered his brief case for X-ray inspection. Signs warned that physical inspection might also be necessary. After the X-ray yielded suspicious results, the passenger declined to open his bag and said he wanted to leave rather than take the flight. Airport officials searched the bag, finding narcotics.
 
 
 14
 This Court found the search constitutional, holding that the passenger had received fair notice that a physical inspection might be necessary and that consent could not be withdrawn once the search had begun. The decision was based on the fact that a contrary result would frustrate the deterrent purposes of anti-hijacking regulations. DeAngelo, 584 F.2d at 47-48; see also United States v. Haynie, 637 F.2d 227, 230-31 (4th Cir.1980) (officers need not desist at the moment it becomes plain that a consensual search will bear fruit), cert. denied, 451 U.S. 972 (1981).
 
 
 15
 The district court reasoned that the same results should obtain in the prison visitor context. Spriggs had been given fair notice that he would be thoroughly searched. He was aware that the aim of the search was to detect contraband, and a reasonable person should have assumed that the search would be commensurate with the need to discover cleverly concealed contraband. Spriggs thus received fair notice of the scope of the search. To permit withdrawal of consent after the search was well underway would encourage contraband smuggling by providing a secure escape for every smuggler whose contraband was close to detection. The district court's decision was correct.
 
 
 16
 Accordingly, we affirm the district court's denial of the motion to suppress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED